HARVEY BUTTON, Executor of ALEXANDER MILLER, *v.* AMERICAN TRACT SOCIETY, AMERICAN HOME MISSIONARY SOCIETY, EPAPHRAS MILLER, HARRY MILLER, Executor of SOLOMON MILLER, AND CHARLES E. MILLER, Administrator of ELISHA MILLER.

[IN CHANCERY.]

*Will. Construction of devise. Admissibility of extrinsic evidence. Instructions by testator for writing the will. Description of devisee.*

For the purpose of determining the intention of a testator, as expressed in a devise, reference is to be had to the general scope of the will, and to every clause of it.

A devise was expressed in a will in these words,—" My east or Jackson farm, so called, I give and dispose of in the following manner,—The American Home Mission Tract Society for our western mission, twelve hundred dollars," and then providing the manner in which it was to be invested. The next clause in the will contained a bequest of $600,00 to the neice of the testator, the interest to be paid to her during her natural life, " and then to go to the above named tract society for their use." And it was held, that it might fairly be inferred, from the terms used, that the testator intended the bequest for the American Tract Society.

And it was also held, that if any ambiguity existed in the description of the devisee, it was not apparent upon the face of the will, but, being created by extrinsic evidence, it was competent to resort to extrinsic evidence to remove the uncertainty.

But it is not competent, for that purpose, to prove by the scrivener, who drew the will, the instructions which were given to him by the testator, to so draw the will, as to give the property to a particular devisee.

Where the devisee was named in the will as " The American home mission tract society for our western mission," and it appeared, that there was no society known by that name, but that the description named in the will contained some terms applicable to each of two well known charitable societies,—the American Tract Society, and the American Home Missionary Society, it was held, that testimony showing that the testator was acquainted with the objects and operations of the American Tract Society, that those operations were mainly confined to the western states, and were there conducted through the agency of colporteurs, or missionaries, that the testator took a lively interest in the society, contributed to its funds in his life time, and expressed his preference for it over

Button, Ex'r, *v.* American Tract Society et al.

other charitable institutions, was proper to be considered, in connection with the language of the will, in determining the intention of the testator; and that this evidence, connected with the terms used in the description of the devisee, and with the language used in a subsequent clause, in which the same devisee was described as " the above named tract society," was sufficient to justify the conclusion, that it was the intention of the testator to convey the property to the American Tract Society.

Devises are to be so construed, as to effectuate the intention of the testator, if it can be done consistently with the principles of law.

It is not necessary, that the name of the devisee should be mentioned in the will; it is sufficient, if the devisee be described by words that are sufficient to denote the person meant by the testator, and to distinguish him from all others.

APPEAL from the court of chancery. The orator alleged, in the bill, that Alexander Miller died in March, 1844, leaving a will, in which the orator was named as executor, and that the will was duly proved and allowed in the probate court, and letters testamentary were granted, and commissioners were appointed, and the list of claims returned and allowed, and that the orator believed, that the property of the estate would be sufficient, after satisfying all just claims, to pay all the legacies given by the will; that the will, among other things, contained a devise in these words,—" My east or Jackson farm, so called, I give and dispose of in the following manner,— The American Home Mission Tract Society for our western mission, twelve hundred dollars, to be secured in a permanent fund in real estate to double the amount, or in bank stock, the interest of which is to be used forever yearly, and no more;"—and also, in the next clause, a devise in these words,—" I give and bequeath unto Laura Miller, my neice, six hundred dollars in the Jackson farm, as above, during her natural life, to be secured in permanent bank stock, or real estate, the interest of which she is to use yearly, and no more, so long as she lives, and then to go to the above named tract society for their use. The above farm contains one hundred and seventy acres; the above legacies to commence as soon as the farm is sold after my decease;"—that by a codicil to his will, allowed by the probate court, the testator gave certain other directions concerning the use, occupation and improvement of the said farm, after his decease, until it should be sold, and also gave, from the avails of the farm three hundred dollars to be added to what was termed, in

XXIII.    43

his will, the minister fund, in Wallingford; that soon after the probate of the will, the heirs at law of the testator gave notice to the orator, that they considered the said bequest of $1200,00 as void, and that the amount would belong to them, upon the final settlement of the estate, and requested the orator to sell the farm as soon as could reasonably be done, and to pay from the avails the legacy of $300,00 named in the will, and the said heirs then released to Laura Miller their interest in the legacy of $600,00 devised to her, and requested the orator to pay to her the whole of that sum, instead of allowing her to take the interest only; that the farm was occupied, in pursuance to the directions given in the codicil to the will, until April 1, 1845, when the possession was surrendered to the orator, and he had sold a portion, and had paid the legacy of $300,00, and also the legacy of $600,00 to Laura Miller; that the residue of the farm remained unsold, and could not probably be sold for more than sufficient to pay the said sum of $1200,00; that the testator left three brothers, his heirs at law, Solomon Miller, Elisha Miller and Epaphras Miller,—of whom Solomon Miller had since deceased, leaving Harry Miller his executor, and Elisha Miller had deceased, and Charles E. Miller had been appointed his administrator; that the orator had no knowledge or belief, that there was any such society as that named in the will as " The American Home Mission Tract Society for our western mission," but that there was, at the time of making the will, a society well known by the name of the " American Tract Society," and also a society known by the name of the " American Home Missionary Society," and that the names, existence and objects of each of these societies were well known to the testator, at the time of making his will; that very soon after the decease of the testator, the contents of the will were made known to each of these societies, and they also understood, that the heirs at law claimed, that the devise was void; that the orator was never notified, by either of the societies, that they claimed, or should claim, the legacy, and the orator had no expectation, that the legacy would be claimed, as against the heirs at law, until August, 1847, when he was informed, that it would be claimed by one, or both, of said societies; and that the orator was ready and willing to pay and account for the rents and avails of the farm to whoever should be entitled to receive them. And the orator prayed, that a writ of sub-

pœna might issue to the American Tract Society, the American Home Missionary Society, to Epaphras Miller, to the executor of Solomon Miller, to the administrator of Elisha Miller, and to Laura Miller, requiring them to appear before the court of chancery and make answer in the premises, and to interplead each other, and to show and establish their respective interests in the legacy above mentioned,—and that the orator might be directed to whom and for whose benefit the legacy should be paid by him,—and for general relief. A subpœna issued accordingly, and was served February 10, 1848.

The American Tract Society appeared and answered, admitting that the several averments in the bill were substantially true,—but averring, that the American Tract Society is a voluntary association of a great numder of individuals residing in different states, which has been formed, under that name, and has existed twenty three years, for the purpose of printing, publishing and circulating, through-out the United States and in other parts of the world, either gratuit-ously, or at the lowest prices at which they can be furnished, tracts and other cheap books, calculated to diffuse religious information and to exert an influence in favor of religion and morality; that the society had a constitution and by-laws,—copies of which were an-nexed,—and each year held its annual meetings, and elected its offi-cers, and continued to prosecute its purposes and objects, as above mentioned; that throughout many portions of the western states, there had always been and still continued to be a very great destitu-tion and need of publications of a moral and religious character and tendency, such as the said society was engaged in circulating, and that for more than seven years the society, in order to farther carry out and effect its objects, had employed numerous agents, or mis-sionaries, sometimes called colporteurs, for the special purpose of cir-culating its publications and disposing of them from house to house, either gratuitously, or by the sale thereof, according to the means of the inhabitants of said states, and had thereby circulated among them a great number of such publications, amounting in all to many millions of pages; that for many years the existence, objects and op-erations of said society, and especially its efforts to circulate its pub-lications extensively through the western states, were generally known throughout the United States, and that the testator was informed

thereof, and had frequently contributed to the support of the same, and had often expressed a strong desire for the furtherance of these objects; that at the time the will was drawn, the testator particularly expressed his wishes to promote the objects of the American Home Missionary Society, and of this society, preferring the latter, and that he had especially in view, in framing the bequests in the bill mentioned, the exertions and operations of said Tract Society through the agency of said missionaries, and that he intended, by means of said bequest, to encourage and promote the same; and insisting, that the intent of the said testator should be carried into effect, by decreeing the payment of said legacies, under proper restrictions, for the benefit of said Tract Society.

The American Home Missionary Society also appeared and answered, admitting the several averments in the bill to be substatially true, and alleging, that that society was a voluntary association of a great number of individuals, residing in different states, which had been formed, and had continued in existence twenty two years, for the purpose of furnishing pecuniary aid, in support of the preaching of the gospel, to churches and societies in the United States, which could not sustain it without such foreign aid; that said society, in pursuance of its constitution and by-laws, copies of which were annexed, held annual meetings, elected its officers, and continued to prosecute its objects, as stated; that in the eastern and better settled portions of the county the objects of the society were chiefly effected through the intervention of auxiliary societies, but that in consequence of the want of ministers and the great destitution of resources for maintaining them in the newly settled and western portions of the country, the exertions of the society have been chiefly directed to supplying such want and destitution in those portions, and that it has been the principal means of supplying many such portions, and of sustaining among them from time to time many hundreds of missionaries, being ministers of the gospel; that the said missionaries annually distribute, in connection with their personal labors, several hundred thousand pages of tracts; that the existence, objects and operations of the society, and especially its efforts to supply the destitute portions of the western states, have been generally known throughout the United States, and its efforts to supply the west have been generally regarded as its most important object; that all this

was well known to the testator, at the time he made his will, and he had frequently contributed to the support of the same, and had often expressed a strong desire for the furtherance of said objects; and that, at the time the will was drawn, the testator particularly expressed his wishes to promote the objects of the said society; and insisting, that the manifest intent of the testator was to bequeath the said fund to this society.

The heirs at law of the testator also appeared and answered, admitting, as true, the facts alleged in the bill, denying that there was any such society in existence as that named in the devise, and insisting, that the devise was wholly void for uncertainty.

The answers were traversed; and it was agreed, on the part of the orator and of the heirs at law, that the answers of the American Tract Society and of the American Home Missionary Society should be taken as true, excepting so far as they relate to the knowledge, intentions and design of the testator in reference to said societies.

The testimony of Sarah Kent was taken and filed, and tended to prove, that she had been for many years an inmate of the testator's family; that the testator was in the habit of taking the Vermont Chronicle, a newspaper printed at Windsor, and occasionally read the Home Missionary, a periodical published by the American Home Missionary Society; that he was interested in the American Tract Society, and the American Home Missionary Society, as well as other societies, whose objects were to do good; that he was more interested in those societies whose objects were confined to home operations, than in those whose objects were foreign, and was particularly interested in the western states; that within two years he was visited and conversed with by an agent of the American Tract Society, who left with him reports of that society, which were read by the testator; that he was interested in the two societies, above named, on account of their operations in the western states,—but the witness did not know, that he manifested any preference for one of these societies over the other. The testimony of Elias W. Kent was also taken, and tended to prove, in addition to the facts testified to by Sarah Kent, that the agent of the American Tract Society visited the testator twice, and the witness heard considerable conversation between them, and that the testator expressed a good deal of interest in its operations, and that the agent explained to him the

system of colporteurs, and that the testator gave money to the agent each time; that the testator manifested a strong interest in home missions, and used to say, that if he had any money to give, he should give it to the home missions in preference to foreign; and that he manifested an interest in the colporteur system. Mosely Hall testified, that the testator was accustomed to contribute to the Home Missionary Society and the Tract Society; that about two years before he died he told the witness, that what he gave, or intended to give, he should give to the Home Missionary or Tract Society, and particularly for the west; that he preferred those societies, because they were doing so much in the west, and that the colporteurs should be sustained; and that frequently, at other times, he expressed the same ideas. This witness also testified, that he drew the will of the testator, from instructions given by him; that the testator then expressed the same anxiety, in conversation, for the west, and said he wished to do all he could for the Home Missionary and Tract Societies for the west; that the testator read a great deal, and appeared to be well informed as to the operations of those societies; and that, in drawing the will, the testator instructed the witness to so draw it, as to leave the legacies in question to the Tract Society. A motion was filed, on the part of the heirs at law, to suppress so much of the testimony as referred to the intentions and wishes of the testator as to the disposition of his property, and especially that part of the testimony of Mosely Hall, which relates to the instructions given to him by the testator, at the time of writing the will. The will of the testator, containing the clauses recited in the bill, was also given in evidence.

The court of chancery decreed, that the bequest was inoperative and void, and that the heirs at law were entitled to the fund, from which the legacy would otherwise have been paid, and that the executor account to the heirs at law for the amount, being allowed first to retain from the fund his costs in this suit, and that no costs be allowed to either of the defendants. And the American Tract Society and the American Home Missionary Society were enjoined from asserting any claim, at law or in equity, to the legacy of $1200, or to any reversionary interest in the legacy of $600. From this decree the societies appealed.

*S. H. Hodges* and *S. Foot* for the American Tract Society.

No objection is made, as it is understood, to the devises in question on the ground that they are made to an unincorporated association, without the intervention of a trustee, since they are clearly for pious and charitable uses. But it is contended, that they are void, and that the heirs must take, because there is a fatal ambiguity in the description of the devisee. This we deny.

I. It is plain from the evidence, that the testator had the American Tract Society in view, as his devisee.

1. We appeal to the evidence of circumstances, &c., respecting the admissibility of which there is no question. In the second devise the object of the testator's bounty is called simply " the Tract Society ;" a name which he could not have used, had he any other supposed devisee in contemplation. The exertions of the colporteurs, sustained by this institution in the western states, explain perfectly his denominating it a Mission Society, and his reference to " our western missions." The latter circumstance can hardly be reconciled with the claims of any other society.

2. The evidence of the testator's declarations was admissible and decides the question. Until a recent date such evidence was received in the courts of Westminster Hall without hesitation ; and it remains to be seen, whether our courts will follow in their footsteps so closely as to reject it. 2 Ves. Sen. 216. 3 Ves. 306. 2 P. Wms. 141. 7 Bing. 628. 2 M. & W. 141. The utmost extent of the late cases, however, is to exclude such testimony, when offered for the purpose of determining what objects, or persons, are embraced in an erroneous description. When a case of *equivocation* arises, when two persons, or objects, come fairly within the description, and it cannot be determined by other means which of them was intended, it is conceded by all, that the testator's declarations may be received to show his intentions. And, according to a chain of weighty decisions, unbroken save by a single case, this may be done, wherever the two persons, or objects, come so nearly within the description, that either would take, were it not for the other; and they may be brought within the description by the same evidence, that of circumstances, &c., that would be admitted, were there only one of them. For this is not to import new terms, or a new description, into the will, by evidence of declarations, but to

settle the question between two claimants, each of whom comes within the terms of the will on competent testimony. The only decision to the contrary is wholly destitute of support from reason, or authority, and, far from being recognized since, is viewed by the courts with evident distrust. *Attorney General* v. *Hudson,* 4 Vin. 485, and 2 Eq. Cas. Abr. 192. *Careless* v. *Careless,* 19 Ves. 601. *Still* v. *Haste,* 6 Madd. 192, *Price* v. *Page,* 4 Ves. 680. *Thomas* v. *Thomas,* 6 T. R. 671. *Smith* v. *Smith,* 1 Edw. Ch. R. 189. *Verner* v. *Henry,* 3 Watts 385, (3 U. S. Dig. 684.) 12 Ad. & El. 431–451. 11 Sim. 467, (5 Har. Dig. 1847.)

II. Even if the evidence of the testator's intentions were not admissible at law, yet courts of equity, in the exercise of their powers over devises to pious and charitable uses, would be bound to sustain these and carry them into effect. The principle, on which they uphold a bequest to a corporation, which is void at law for a misnomer, and deeds and wills void for other like defect, (Stor. Eq. Jur., sec. 1170, 1171,) illustrates this sufficiently, though we might adduce many others. Stor. Eq. Jur., sec. 1165 to 1177. The courts of this country, including those of the general government, now recognize the law of pious and charitable uses as a subject of original chancery jurisdiction. And the courts of this state are very extensively understood to have sanctioned this conclusion. Stor. Eq. Jur., sec. 1154 *b,* 1162, &c. *Baptist Association* v. *Hart's Executors,* 4 Wheat. 1. *Inglis* v. *Sailor's Snug Harbor,* 3 Pet. 99. *Vidal* v. *Girard's Executors,* 2 How. 127, 195. 2 Kent 288. 9 Cow. 437. 24 Pick. 152. U. S. Digest, "Charities and Charitable Uses." *Stone* v. *Griffin,* 3 Vt. 400. *Pawlet* v. *Clark,* 9 Cranch 292. *Burr's Executors* v. *Smith,* 7 Vt. 241, (291.) *Beatty* v. *Kurtz,* 2 Pet. 566. Ang. & Ames on Corp. 143. The doctrine of *cy-pres* itself, though sometimes the subject of stricture, has never been repudiated. It has constituted an essential branch of the law of pious and charitable uses from its earliest origin under the imperial rule. And we have yet to learn, that it is less congenial to our institutions, than to those of any nation where that law has prevailed. *Domat, passim,* cited in Stor. Eq. Jur., sec. 1139, 1140. *Witman* v. *Lex,* 17 S. & R., cited 2 How. 197. *Glass* v. *Withite,* 2 Dana 170, (1 U. S. Dig. 507.) In England the chancellor, it is true, sometimes resorts to a specially delegated jurisdiction; but this

is only when disposing of devises to unlawful charities, and general charities, technically so called, and when acting under the statute of Elizabeth, and even that statute created no new law, though it introduced a new process. (Story's Eq. Jur. 1154, a.) The law of charities, and even that of *cy-pres,* he puts in practice, in all other cases, in the exercise of the inherent powers of his court. Story's Eq. Jur. 1187, 1188, 1190, and cases cited. 7 Vt. 294, 305. 2 How. 195–197. *Moggridge* v. *Thackwell,* 7 Ves. 36. The attorney general is also a necessary party, in many cases arising under the law; but the court derive no authority, or jurisdiction, from this. It is a mere prerogative of the crown, and, as a measure of municipal policy, other states may adopt or reject it. 1 Hawks 96, (cited 1 U. S. Dig. 507.) 9 Cow. 482. 2 Pet. 583. 3 Ib. 498.

*C. L. Williams* for the heirs at law.

1. The testimony of Mosely Hall, as to the intentions and directions of the testator at the time of making the will, is inadmissible and should be suppressed.

2. The devise is inoperative and void, on account of its vagueness and uncertainty. We are to determine, not what disposition the testator intended to make, but what disposition he actually did make of this legacy in his will, and the decision of the chancellor must be declaratory of what is in the testament. Wigram on Wills, as quoted in 1 Greenl. Ev., § 291. PARKE, J., in *Doe d. Templeman* v. *Martin,* 4 B. & Ad. 771, [24 E. C. L. 159.]

Taking the will by itself, and nought is presented but a case of legal hopeless uncertainty. Add to it all the testimony, except that of Mosely Hall, and we are not able to arrive at a more satisfactory conclusion. And even with his testimony, upon giving it its just weight, the same uncertainty remains.

But this testimony is inadmissible. Extrinsic testimony as to a testator's intentions and directions is admissible only when the thing devised, or person, " is described in terms which are applicable indifferently to more than one person, or thing." Wigram on Wills; 1 Greenl. Ev., §§ 286, 291. *Hiscocks* v. *Hiscocks,* 5 M. & W. 363. Greenleaf's conclusion is, that such extrinsic testimony is admissible only " when the description of the person intended is applicable with legal certainty to each of several subjects." 1 Greenl.

XXIII. 44

Ev., §§ 280–291, 300.   7 Met. 206–209.   It cannot be pretended, that this is a case of equivocation,—that the terms used in the will are applicable indifferently to each of the different societies.   They are applicable to neither; neither answers the words of the will. The description, then, used, is not on its face perfect and intelligible, but is both obscure and *patently* ambiguous.   Upon the principles stated in *Thomas* v. *Thomas*, 6 T. R. 671, and *Hiscocks* v. *Hiscocks, ub. sup.*, the claim of the heirs at law must prevail.

No different rule is to obtain, on account of the legacy being apparently for a pious use.   It is not to be denied, that such a doctrine is to be found in some treatises, and has obtained the sanction of the *dicta* of some English judges; but it is to be doubted, whether it was ever the well settled doctrine of the English common law; and in *Ex'rs of Burr* v. *Smith*, 7 Vt. 313, MATTOCKS, Ch., in his dissenting opinion, successfully combats the position, that our law makes any distinction in favor of a will for the benefit of a charity.

The doctrine of *cy-pres* is disapproved of by modern chancellors in Great Britain, and has never been established or sanctioned by an American decision; and in North Carolina it has been decided, that it does not prevail.   *McAuley* v. *Wilson*, Dev. Eq. R. 276 ; 2 Eq. Dig. 478.

Our court of chancery has no jurisdiction for applying a legacy simply to carry out a general intent of charity,—that jurisdiction being had in England by chancellors, as keepers of the king's conscience, who has charge of charities, as *parens patriæ*.   3 Bl. Com. 427.   *Baptist Assoc.* v. *Hart's Ex'rs*, 4 Wheat. 1, [4 U. S. Cond. R. 372.]   3 Pet. 498, 500,   2 Story's Eq. Jur., § 1190.   In England the chancellor would not proceed and devise a scheme, without the presence of the attorney general.   *Wellbeloved* v. *Jones,* 1 Sim. & Stu., [1 Cond. Eng. Ch. R. 41.]   We have no officer in this state, whose duty it is to take charge of uncertain devises to charity.

The opinion of the court was delivered by

KELLOGG, J.   This was an appeal from a decree of the chancellor for the first judicial district.

The orator was appointed executor of the will of Alexander Miller and as such undertook the execution of the trust.   Miller, by his will, made certain bequests, which are in the words following;—

" My east or Jackson farm, so called, I give and dispose of in the following manner. *The American Home Mission Tract Society for our western missions,* twelve hundred dollars, to be secured in a permanent fund in real estate to double the amount, or in bank stock, the interest of which is to be used forever yearly and no more."
"I give and bequeath unto Laura Miller, my niece, six hundred dollars in the Jackson farm, as above, during her natural life, to be secured in permanent bank stock, or real estate, the interest of which she is to use yearly, and no more, as long as she lives, and then to go to the *above named Tract Society* for their use."

The orator, as executor, caused the will to be duly proved, and, while the estate was in progress of settlement, he was duly notified, that the bequest first above mentioned and the residuary interest in the bequest above named of six hundred dollars, after the decease of Laura Miller, were severally claimed by the American Tract Society, The American Home Missionary Society, and the heirs at law of the said Miller.    Whereupon the orator filed the present bill of interpleader, calling upon the said societies and the heirs at law to show and establish their rights to the aforesaid bequests.    The parties appeared and filed their respective answers, which were traversed, and testimony taken, and upon hearing in the court of chancery it was decreed, that the legacy in the will for the benefit of the "American Home Mission Tract Society for our western mission" is inoperative and void, and that the heirs at law of Alexander Miller are entitled to the legacy, and the orator is ordered to pay the same to them.

The decree of the chancellor is based upon the assumption, that the legacy of twelve hundred dollars is void for uncertainty as to the legatees;—that no society appears to claim the legacy, that answers the description of the legatee, as given by the testator.    It cannot be doubted, that the testator intended to bequeath the $1200 for charitable and religious purposes, that he specified the fund, from which it should be realized, and that he *intended* to designate with sufficient certainty the legatee, or trustee, who should take charge of the legacy and apply the yearly proceeds of the same to the purposes indicated by the will.    Whether the testator has sufficiently described the legatee, so as to make the legacy valid and operative, is the only question raised in the case; and if he has failed to do

this, the decree is right and should not be disturbed.   It appears by the evidence, that, previous to the execution of the will, the testator had been accustomed to contribute to the funds of the American Tract Society and the American Home Missionary Society, that he was acquainted with the operations of those societies, and manifested much interest in their success, but expressing a preference for the Tract Society.

The Tract Society employed persons called colporteurs, or missionaries, to travel in the western states and distribute their publications, in the success of which the testator was known to feel much interest.   That he intended the bequest for either the American Tract Society, or the American Home Missionary Society, we think can hardly be doubted; although the description of the legatee in the will does not precisely correspond with the name of either society.   We are of opinion, that the testator intended the bequest for the Tract Society.   This intention, it seems to us, is fairly to be inferred from the language of the will.   And for the purpose of ascertaining the intention of the testator we are to have reference to the general scope of the will and to every clause of it.   The next succeeding clause in the will is a bequest of six hundred dollars to the testator's neice, Laura Miller, during her natural life, the interest of which she is to use yearly, and at her decease the principal to go to the *above named Tract Society*.   Here the reference is to the society by the proper name of the association, and by which it is generally known.   The same party, that is entitled to the legacy of $1200, is entitled to the reversionary interest in the legacy of Laura Miller; and hence we conclude, that the testator, in making these bequests, had in view the American Tract Society.   No other known society so well answers to the description of the legatee given in the will.

But if this were doubtful, when considered with reference to the will alone, it would be admissible to resort to extrinsic evidence to remove the uncertainty.   If any ambiguity exists, it is not apparent upon the face of the will, but is created by extrinsic evidence, and may be removed by the same species of evidence.   *Brewster v. McCall's Devisees*, 15 Conn. 274.   The description in the will is, "The American Home Mission Tract Society for our western missions."   This description contains some terms, which are applica-

ble to two well known charitable societies, the American Tract Society and the American Home Missionary Society.   Hence the uncertainty as to which society the testator intended to make the recipient of his bounty.

In examining the testimony we lay out of the case the instructions given by the testator to Hall, the scrivener who drew the will, *to so draw it as to give the property to the Tract Society,* inasmuch as we regard the weight of authority to be against its admission. The testimony, showing that the testator was acquainted with the objects and operations of the Tract Society, that those operations were mainly confined to the western states, that he took a lively interest in the society, contributed to its funds in his life time, and expressed his preference for it over other charitable institutions, we entertain no doubt is legal testimony and proper to be considered in connection with the language of the will, in determining the intention of the testator ; and when so considered, we are led to the conclusion, that it was manifestly the intention of the testator to convey the property in question to the American Tract Society.   Such being the intention of the testator, it should be carried into effect, provided it can be done consistently with the principles of law.   4 Dallas 347.   *Gardner* v. *Heyer,* 2 Paige 11.   So strongly does the law favor carrying into effect the intention of the testator, that devises by *implication* are sustained.   *Rathbone* v. *Dyckman,* 3 Paige 10. So the clear literal interpretation of words in a will   may be departed from, if they will bear another construction, where other parts of the will manifest a different intention.   3 Paige 10.

A court never construes a devise void, *unless it is so absolutely dark,* that they cannot find out the testator's meaning.   *Minshull* v. *Minshull,* 1 Atk. 411.   Powell on Devises 421.   So it is held by the court in *Tucker et al.* v. *Seamen's Aid Society et al.,* 7 Met. 205, that if in the matter of description there is a mistake, that is, if there is no one, who corresponds to the description *in all particulars,* but there is one who corresponds in *many particulars,* and no other who can be intended, such person will take.   So again it is held, that where the description, in the will, of the *person* or *thing* intended is applicable with legal certainty to *each of several subjects,* extrinsic evidence is admissible to prove which of such subjects was intended by the testator.   1 Greenl. Ev., sec. 290.   So in *Beaumont* v. *Fell,*

2 P. Wms. 141, the testator devised a legacy to Catharine Earnly; the person who claimed the legacy was Gertrude Yardly, and it was admitted, that no person by the name of Catharine Earnly claimed the legacy; but it appearing in proof, that the legacy was *intended* for Gertrude Yardly, it was held by the master of the rolls, that the legacy was a good legacy to Gertrude Yardly. Here, for the purpose of giving effect to the intention of the testator, a person of a different name from the one described in the will was allowed to take the legacy.

In *Brewster* v. *McCall's devisees,* 15 Conn. 274, which was analagous to the case before us, it was held, that a devisee may be designated by *description,* as well as by name, and that such a description is as available in the case of a corporation, as of a natural person. The testator devised a portion of his estate to "The Missionary Society of Foreign Missions." No society by the name given in the will claimed this devise, but it was claimed by the "American Board of Commissioners for Foreign Missions." This claim was resisted by the heirs at law, upon the ground that the devise was void for uncertainty, and that it could not be aided by parol testimony. But the court held,—1. That the devise was not void on its face for uncertainty as to the devisee;—2. That the extrinsic evidence introduced was proper to ascertain such devisee;—3. That, under the circumstances proved in connection with the will, the *American Board of Commissioners for Foreign Missions* was sufficiently designated as the devisee by *description.* The court say, there is no ground for the claim, that the devise is void on its face for uncertainty as to the devisee intended. Whatever doubt there may be as to the person intended, such doubt does not arise from any expressions in the instrument, which are of themselves so equivocal, obscure, uncertain, contradictory, or unmeaning, that they are not susceptible of being understood and applied; nor does the extrinsive evidence in the case disclose such facts, as render it impossible to ascertain the meaning of the language used by the testator. The court held the devise to be made to the American Board of Commissioners for Foreign Missions by *description,* and not by *name;* and that there is no rule applicable to devises, which requires the name of the devisee to be mentioned; that it is only necessary, that the description of the devisee be by words that are sufficient to

Button, Ex'r, *v.* American Tract Society et al.

denote the persons meant by the testator, and to distinguish them from all others." This case seems to have been well considered by the superior court of Connecticut and in principle is not distinguishable from the present case.

In the case at bar the description of the devisee in the will contains all the words, which constituted the name of the Tract Society. It does, indeed, contain other terms; but those are not inapplicable to but are descriptive of the American Tract Society. The operations of the society were of a missionary character, their colporteurs were missionaries, and the field of their labor was in the western states. And it is highly probable, that the testator, at the time he made his will, had in view the missionary character of the society, which led him to describe it in the manner he did. The terms used by the testator are applicable to and well describe the American Tract Society, and there is no other society, that we are aware of, to which all the terms are applicable. There is a decided preponderance of proof in favor of the claim of the Tract Society. And it seems to us, there can be no reasonable doubt, that the American Tract Society is entitled to the legacy.

The decree of the court of chancery is reversed, and the case remanded to that court, with directions to enter a decree in favor of the American Tract Society, in accordance with the foregoing opinion.