Allen, J.
The testator, by his original will bearing date in October, 1865, and a codicil made in June, 1868, gave two sums of $5,000 and $20,000 respectively, to a single institution named and described as “ The Society for the Relief of Indigent Aged Females.”
There are but two claimants of these bequests, both incorporated institutions and neither bearing precisely the name used in the will and codicil, hut each administering a worthy charity, more or less closely assimilating to that indicated by the terms of the bequests.
Ho one is here to contend that the bequests are void for uncertainty, or invalid for any reason, or that the testator did not have in his mind, and name in his will, as the beneficiary intended, one of these institutions.
A bequest would not be held void for uncertainty as to the legatee, except when it was found impossible, either from the words used alone or in connection with such extrinsic evidence as would be competent, to determine with reasonable certainty the person or corporation intended.
It is well settled that an imperfect or inaccurate description of a person, natural or corporate, will not defeat a gift or grant.
When there are two corporations, neither of which precisely answers the description of the will, and both answering equally well, and there are no circumstances which would incline the court to believe that the testator meant the one rather than the other, it is possible under the law in this State the gift would fail, although the courts in England, as it seems, would divide the legacy, and thus give effect to the general intent of the testator, although partially departing *194 from Ms particular intent. (Atchins’ Trust, L. R. 14, Eq. Cas., 230.) TMs rule has not been, as yet, established with us.
It is not necessary that a corporation should be designated by its corporate name to entitle it to take as legatee. It is sufficient if it is so described that its identity can be established, that is, so that it may be distinguished from any other. (The New York Institution for the Blind v. How's Exr's, 10 N. Y., 84; Bernasconi v. Atkinson, 10 Hare, 345; Smith v. Smith, 4 Paige, 271.)
The name is but one of several ways of identifying a person or corporation. A testator might, under some circumstances, be less likely to mistake the objects and purposes of a corporation than the precise title given by the act of incorporation. If there are two corporations, neither of which can claim under the precise name used by the testator, the question, if the name rather than the description is to control, is, which . of the two is best or most nearly described by the name? and if the description is to prevail, then the question is, which of the two will best and most closely answer to the delineation of the corporation by the testator? If, from the will and the charters of the two corporations, the court can determine which of the two was intended by the testator, there can be no resort to other evidence in aid of the interpretation. In other words, if, with a knowledge of the name of the two corporations and of their general character and purposes as declared by the laws of their creation, there is no latent ambiguity, there is no necessity for a resort to parol evidence, and it would not be allowable.
If there were no institution in the city of Hew York for the relief of indigent, aged females other than the defendant, it would not be an open question as to its right to the legacies. (The New York Institution for the Blind v. How's Ex'rs, supra.) The substantial agreement in name and entire harmony with the description would clearly establish its identity with the institution named in the will. The name in the will is very nearly the baptismal name of the defendant. Substitute the word “ association ” for “ society,” and *195 insert “respectable” before “aged,” and we have the corporate name of the defendant with entire accuracy, save the transposition of two words not affecting the meaning. The adoption of “society” for “association,” as the most usual word, was a very natural mistake by one not having the charter before him. The latter is an unusual word, and one not likely to occur to any one having occasion to refer to the institution by name. The word “indigent” is rather surplusage in the title, for none but that class would need temporal relief, and in establishing and supporting a society for the relief of aged females, the necessity of the objects of the charity would be implied. A variation in words and syllables in naming a corporation is not necessarily a misnomer. The omission, transposition or alteration of some of the words composing the name, if there is enough to show that there is such an artificial being, and to distinguish it from all others, will not vitiate a gift or grant. (Newport Mech. Man. Co. v. Starbird, 10 N. H., 123; A. & A. on Corp., § 99, and cases cited; id., § 185, and cases cited in note 3.)
The identity of the defendant with the corporation named in the will is apparent from the name, in the absence of evidence that there is another corporate body of the same or similar name. The names are in substance the same, and almost identical in the words of which the names are composed.
The corporate purposes and objects of the defendant are precisely those called for by the descriptive name given it by the testator. That is, the charity is precisely that indicated by the name adopted by the testator to designate the object of his bounty as well as that indicated by its actual name. The charity is general, unrestricted, including all coming within the description of indigent and aged and belonging to the female sex. The only qualification or limitation is found in the charter title of “respectability;” but that is unimportant. It merely indicates a charity for honest poverty, as distinguished from poverty associated with crime.
The necessary inference is, that the testator meant the *196 defendant, having a name so nearly that used, and administering a charity so well defined by the name chosen to designate the legatee, in the absence of evidence of an institution having the precise name used by him.
It is claimed, however, that the plaintiff is equally well described by the testator, and that the circumstances clearly establish its identity with the corporation named in the will. The charter name of the plaintiff is “ St. Luke’s Home for Indigent Christian Females.” It contains but two of the descriptive words found in the will, “ indigent *’ and “ females.” The other parts of the title or name serve to give the institution its distinctive character, and have no counterpart in the descriptive title of the institution to which the legacies are given. St. Luke’s Home is not synonymous with “ society,” or an “ association for the relief” of the class to be benefited. The prefix is significant, and indicates very clearly a religious, if not a denominational institution, in opposition to a general or public charity. It is a name or title which would not be likely to be forgotten or overlooked by one having or taking an interest in the charity. “ Home,” as used, does not indicate a provision for general relief to be furnished as the necessities of the poor should require, either at the house of the institution or elsewhere, as is practiced by the defendant, but rather the providing a permanent residence for the beneficiaries of the charity, and when read in connection with the constitution and regulations of the plaintiff, it is found that the furnishing of a genial Christian home for those who have been in better circumstances, but have become reduced, is really meant. In other respects the beneficiaries of the charity are confined within a limited class of communicants in a single denomination of Christians, and other conditions are found incompatible with the charity described in the will, while the distinctive qualification of age in the objects of the relief is wanting.
The institution of the plaintiff is worthy and well entitled to the sympathy and support of the church of its creation and control. Hot one word can be said against its objects, or the *197 terms and conditions annexed to the relief granted. This is only one of the many charities of that denomination of Christians, and but a single class was had in view. The institution was doubtless organized to meet a special want and accomplish one good work, leaving other works of benevolence to be cared for by other instrumentalities. The criticism of the name and of the organization is not intended to depreciate the charity, but merely to show, as it does conclusively, that neither in its name, nor its objects and purposes, has it as close a resemblance to the charity or charitable institution named and described in the will of the testator as has the defendant in both.
A general charity for “ indigent aged females ” was intended by the testator, and the plaintiff is a charity similar in character but essentially different in its details. The words found in the plaintiff’s title, which are not in the testator’s description, are important, of the essence of its administration, and necessarily take it out of the description of the charity meant by the will. (In re Atckins’ Trusts [supra], Bradshaw v. Bradshaw, 2 Y. & C., 74; Wilson v. Squire, 1 Y. & C. Ch., 654.) In each of the cases cited, legacies were adjudged to institutions having names very materially differing from those used by the testators to designate the devisees, and to those of the contesting claimants most nearly answering to the designations of the will, and most in harmony with the intent of the testator, as manifested by the terms of the bequest.
In Cromie's Heirs v. Louisville Orphan Home, etc. (3 Bush. [Ky.] R., 365), a gift by will to the Presbyterian Orphan Asylum of Louisville was adjudged to the Louisville Orphan Home Society, upon proof that it was generally known and called by the name of the Presbyterian Orphan Asylum, and in the same case “ The House of Mercy, Hew York,” was held intended in a gift to “ The House of Mercy ,of the city of Hew York,” as against “The Institution of Mercy,” located in the same city. The court was of the opinion there was no ambiguity, and that it was only when unambiguous words would apply with equal certainty to dif *198 ferent objects or things, that extraneous testimony was admissible. “ When the words clearly apply to a particular person or object, no latent ambiguity can be established by proof aliunde of any other person or object of a different description or name.” (Per Robertson, C. J. See, also, Wigram, Ex. Ev., §§ 6, 9, 215.) Evidence of- intention is not admissible to show that where the description in the will imperfectly applies to one person and more perfectly to another, the former was really intended. This is not regarded as a strict equivocation. Mr. Redfield says: “ There not occurring a precisely equal ground of application of the terms of two subjects or objects, the case must be determined upon the preponderance in favor of one as matter of construction, and there is no occasion to resort to extrinsic evidence.” (1 Red-field on Wills, 566, § 13; Delmar v. Robello, 1 Vesey, 412.)
In re Brisco?s Trusts (20 Weekly Reporter, 355), a legacy was decreed to one of two charities claiming it, neither of which could claim under the general description of the will, upon proof that the testator was a subscriber and a life director of the one and always called it by the name used in the will. The words would have applied equally well to either.
In Bernasconi v. Atkinson (10 Hare, 345), the name applied substantially to one of the contestants and the description to the other, and which was meant by the testator could not be determined from the will itself, and extrinsic evidence was resorted to, and the legacy given to the name rather than the description, the vice-chancellor concluding’ his opinion with the remark: “ Upon the whole case, I am of opinion that it is less likely that the testator was mistaken- in the name of the legatee than in some circumstances connected with him.”
In Button v. The Am. Tract Society (23 Vt., 336), neither of the claimants answered the description in the will, and neither came any nearer to it than the other. Within the rule, therefore, the will was construed with the aid of extrinsic circumstances.
*199 The defendant has, substantially, the name by which the testator has undertaken to designate the donee of his charity, and in its general objects and purposes precisely squares with the description and name in the will.
The proof of the existence of the plaintiff as a corporate body, having so little resemblance in name to that found in the will, and a purpose and object so far short of that in the mind of the testator, as disclosed by the terms of the bequest, does not create an ambiguity, or authorize a resort to extrinsic evidence to determine the meaning of the testator. The testator, with reasonable accuracy, having described and named the defendant, it is not competent to show by parol that an institution of a different name and character was intended. This would be to make a new will. (Delmar v. Robello, 1 Ves., 412.) The name and description of the legatee in the will, and the names of the two institutions claiming the legacy, being placed in juxtaposition and compared, it will be seen at once that there is no uncertainty or room for doubt as to which of the institutions was meant.
The extrinsic evidence adduced upon the trial is only confirmatory of the conclusions deduced from the will itself, that the defendant’s corporation was the institution meant by the testator. It was suggested that this court was concluded by the finding of the court below of the intention of the testator to designate and name the plaintiff as the donee. The judge finds this intention “ as a conclusion of fact, and as a construction of said will.” Intent is in some cases a question of fact, to be found and proved as such. This is especially so when the intent characterizes the act, making it lawful or otherwise, as it was done with, or without a fraudulent or wicked motive.
In such cases the finding of the fact, by the "court of original jurisdiction, may be conclusive in this court. So, too, if a devise or bequest is equivocal either as to the subject or the object, and the meaning of the testator cannot be ascertained by a construction of the will with the aids allowed by law, and the intent of the testator, as proved by extrinsic *200 evidence, alone gives direction to and controls the gift, the intent may be a question of fact which this court could not review.
A devise or bequest to “my nephew John,” the testator having two nephews of that name, or a bequest of “ my white horse,” the testator having two white horses, and nothing in the will or the extrinsic circumstances to indicate which nephew or which horse was meant, are familiar examples of this species of equivocation, and permit evidence of the intent as a controlling fact in giving effect to the will.
It is nof necessary to decide whether, in such case, the' question of fact would be so entirely distinct from the other questions connected with the construction of the will as to exclude it from the consideration of this court. But the judge' has not found the intent solely as a fact, but also as a construction of the will.
The construction of .a will or other instrument in writing is always a .question of law, and the finding is inconsistent with itself. If the will, by the construction of law, gave the legacies to the plaintiff, the actual intent proved by evidence aliwnde could not change the direction; and if the will was equivocal, so that the intent could give the direction to the legacy, that fact, and not the legal construction of the will,' was controlling. The most that the judge intended was, probably, to find that, construing the will in the light of the' surrounding circumstances, the meaning of the testator was to give the legacies to the plaintiff. But in any view of the case, so long as the question is one of construction, every court to which the question may be submitted must necessarily be entitled to the benefit of every circumstance which the law permits to be taken into consideration, as tending to throw light upon the actual meaning of the testator in the use of particular words or terms. It would be a farce to give an appeal upon the construction of a will, and yet deny the appellate court the legal aids to a right determination.' This court must, as nearly as it can, and as the court below' properly might, place itself in the position of the testator, *201 acquaint itself with the knowledge the testator had of his property, and his relations in life, and the claims upon him, his associations, connections and habits, and all his antecedents, so far as they may be supposed to have given form and character to the expression and terms of his will.
First. The plaintiff lays stress upon the fact that the testator was a communicant in .the Episcopalian Church, and that the institution of the plaintiff is one of the benevolent institutions of that church. But his religious feelings do not seem to have influenced, to any great extent, his testamentary act; and the circumstance is a very slight one, and entitled to but slight consideration.
Second. It is claimed that the testator once (in 1863) contributed twenty-five dollar's to the institution. He died in 1869 ; and the fact that he gave this inconsiderable sum six years before his death, and never more took interest in or contributed to its support, dependent as it was upon the contributions of the benevolent for its support, would rather prove that he was not particularly partial to it, or disposed to appropriate largely of his property for it. This was one of the contributions which gentlemen liberally disposed give daily to charities at the instance of friends, without having or taking any especial interest in the particular charity, and is not entitled to any consideration in giving construction and effect to the will.
Third. The evidence of Dr. Eygenbrodt is relied upon as tending to show a favorable inclination of the testator to the institution of the plaintiff. It is difficult to deduce any inference one way or the other from it. After the original will had been made and before the making of the codicil, the testator, contemplating the establishment of a new charity upon a large foundation, consulted his friend, Dr. E., who dissuaded him from his project and pressed upon him, under some name, the institution of the plaintiff of which the testator appeared to have full knowledge. But it is noteworthy that in all the interviews the doctor did not get from him an intimation that he had already made provision for it in his *202 will, which would have' been very natural if he had in fact done so, or that he would in a codicil or a new will remember it. I am unable to see in this evidence anything favorable to the plaintiff’s claim.
Fowth. The declarations of the testator to his solicitor in giving directions for preparing the codicil are passed over for the reason that the admissibility of such evidence is doubtful, and as it was admitted in behalf of the defendant it is not necessary to consider the question in the view taken of the merits without the aid of this testimony.
Fifth. The defendant was an old institution existing from 1815, extending the benefits of its charity to large numbers both at the institution and through the city, and was widely and favorably known, and it is not to be inferred that the testator was more ignorant than his clergyman and solicitor and other gentlemen- of intelligence with whom he associated. The plaintiff was incorporated in 1850, and gives relief to a fewer number of persons, and only at the home it provides. These are the leading and prominent circumstances brought out by the extrinsic evidence, and they throw but little light upon the-meaning of the will. Certainly there is nothing in the evidence to warrant a diversion of' the bequests from the defendant, so well and sufficiently described both in the will and codicil, for the benefit of the plaintiff, to which the terms employed have no apparent application.
The meaning of the testator is patent, and the judgment of the Supreme Court must be reversed, and judgment given for the defendant, adjudging it entitled to the legacies given in the will and codicil to “ The Society for the Belief of Indigent Aged Females,” without costs to either party as against the other.
All concur, except Gboveb, J., not voting.
Judgment accordingly,