1831.<br>SMITH<br>v.<br>SMITH.

---

ABRAHAM SMITH and MARY his wife *vs.* NATHANIEL SMITH and SARAH his wife and others.

---

If the context of a will affords sufficient evidence of the identity of the person intended as a legatee, the will alone must be looked to in order to clear up the difficulty and determine the question.

But if the context fails or after examining the whole of the will it is still impossible to ascertain from such a source alone who is the proper person to take, then recourse must be had to parol evidence.

In no case, however, is the bequest to be deemed void for uncertainty as to the person, provided the person intended to take can be identified by any competent evidence. Where neither the will nor the extrinsic evidence is sufficient to remove the ambiguity in respect to a devisee or legatee, the devise or bequest must fail from uncertainty.

If a legacy be given to a person by a correct name but with a wrong description or addition, the latter will not vitiate the bequest, but will be rejected.

In the present case, a legacy was left "To Mary S., wife of Nathaniel S., "$300." Mary S.'s husband was named *Abraham* and Sarah S.'s husband was *Nathaniel* S. Upon extrinsic evidence and circumstances: *it was held,* that Mary Smith was intended.

November 19.<br>1831.<br><br>Will.<br>Legacy.<br>Wrong de-<br>signation.

---

THE circumstances of this case will be found in the opinion of the court.

Mr. *R. Bogardus*, appeared for the complainants.

1831.

SMITH
v.
SMITH.

January 3.
1832.

Mr. *W. Silliman,* for the defendants Nathaniel Smith and wife.

THE VICE-CHANCELLOR. The bill in this cause is filed for a legacy of three hundred dollars, given by the will of Mrs. Catharine Thomas, widow of the late General Thomas, of Westchester County. This will bears date the thirtieth day of December, one thousand eight hundred and twenty-four. The testatrix died about the tenth day of January, one thousand eight hundred and twenty-five. After devising various parcels of real estate to different persons and making some specific bequests of personal property, she directs her executors to sell all the residue of her estate, both real and personal, and out of the moneys, when received, to pay legacies to twenty-four different individuals named in the will. The amount of each legacy is written opposite to their names: to some, the legacy is one thousand dollars, others have five hundred dollars, or three hundred dollars, and to some a less amount is given. Among the number, and the nineteenth in order, is : " *To Mary Smith, wife of Nathaniel Smith, Three* " *hundred dollars.*"

It so happens that Mary Smith's husband is Abraham Smith, and Nathaniel Smith's wife is named Sarah. Hence arises the question, for which of the parties was the legacy intended ?

The complainants, Abraham Smith and Mary his wife, insist, that the mistake is in the description and not in the name of the legatee : and therefore, they are entitled to receive it. On the other hand, it is said, the mistake was more likely to occur in the name than in the description, on which account Nathaniel Smith's wife, although named Sarah, is the proper legatee. To determine this question is the sole object of the suit.

There is no ambiguity about the legacy or the legatee on the face of the will. It is clear and explicit, on the assumption that there is a person fully answering to the name and description of the legatee. But there is an ambiguity arising *dehors* the will, from the fact that neither of the claimants comes within the full designation of the legatee : a part of it referring nominally to one person and the remainder of it descriptively to another. This, taken by itself, is a latent ambiguity, which it is

admissible to have removed by extrinsic evidence. If, however, the context of the will affords sufficient evidence of the identity of the person intended as the legatee, the will alone must be looked to in order to clear up the difficulty and determine the question. But if the context fails or, after examining the whole will, it still remains uncertain who is the proper person to take, then recourse must be had to parol evidence. In no case, however, is the bequest to be deemed void for uncertainty as to the person (as has been suggested in argument) provided the person intended to take can be identified by any competent evidence. Lord Hardwicke says, in *Minshull* v. *Minshull*, 1 *Atk.* 412, " a court never considers a devise to be " void, unless it is so absolutely that they cannot find out the " testator's meaning." Roper, in his Treatise on Legacies, vol. 1, chap. II. § 18, p. 134, examines, with great care, all the cases and shows clearly how parol evidence is admissible to raise and remove latent ambiguities in wills. He lays it down as a settled rule, where the description of the legatee is erroneous, but the error not occasioned by any fraud practised upon the testator and there is no doubt as to the person intended, that the mistake will not disappoint the bequest: and, therefore, if a legacy be given to a person by a correct name, but with a wrong description or addition, the mistaken description or addition will not vitiate the bequest, but will be rejected. Authorities are abundant in support of Mr. Roper's proposition. A review of one case will be sufficient. In *Careless* v. *Careless*, 1 *Meriv.* 384, *S. C.* 19 *Ves.* 601, a testator gave a legacy " to Robert Careless, his nephew, the son of Joseph " Careless." The testator had two brothers, one named John and the other Thomas, who both survived him. And they had each a son called Robert: but the deceased never had a brother named Joseph, and no other nephew called Robert except the sons of John and Thomas. They both claimed the legacy; and each went into parol evidence to show how he and not the other was intended. Sir William Grant, M. R., who decided the cause, remarks, there being two nephews both named Robert and neither of them the son of Joseph were facts *dehors* the will, and therefore constituting a latent ambi-

guity. The evidence was consequently admissible to explain the will; and it showed that the testator was intimately acquainted with one and but little known to the other. The presumption, therefore, was, the testator intended that nephew to take whom he best knew and with whose name it was certain he was best acquainted. Although the case of *Careless* v. *Careless* is not in all respects like the present, yet there is enough in the principle upon which it was decided to show it is not only proper but oftentimes necessary to resort to parol evidence as the only guide in determining the question. In *Thomas* v. *Thomas,* 6 *T. R.* 671, it was held, such evidence was admissible to ascertain the person of the devisee where the question was whether the name or the description should prevail. But it is true, as exemplified by the result of this case, that if neither the will nor the extrinsic evidence is sufficient to remove the ambiguity in respect of the devisee or legatee, the devise or bequest must fail from the uncertainty of its object.

I will now proceed to examine the evidence in the cause. It is proved that Mary Smith, who claims to be the legatee, called the testatrix " aunt;" and was not only in the habit of visiting her from childhood, but of staying with her several weeks and even months at a time. Also, that the testatrix appeared to be very fond of her, even to the time of her last sickness; and it seems there existed a strong attachment between them, although it does not appear she was related by blood to the testatrix. She was the grand daughter of the sister of General Thomas, the testatrix's husband. Her name originally was Smith; and prior to her marriage with the complainant, Abraham Smith, she was the widow of one Degrove and resided in the city of New York, where the testatrix was in the habit of visiting her. About fifteen years ago she married her present husband and removed to Smithtown in Suffolk county, where they now reside.

Sarah Smith, the other claimant, is proved to be much more nearly related to the testatrix, being the daughter of John Floyd, a nephew of the deceased, and therefore a great niece to the testatrix, who was consequently her great aunt. She

and her husband Nathaniel Smith also reside at Smithtown. Although nearer related than Mary, yet there was not the same attachment or intimacy. There is no evidence of Mrs. Sarah Smith's visiting her aunt but once, and then it was in company with her two sisters; on which occasion they spent two nights at the house. This appears to be the extent of their intercourse, as none other is shown. Considering these facts, it seems much more probable, when the testatrix proceeded to dictate her will, that the feelings arising from the recollection of former intimacy and the fondness and affection which she appears to have cherished for one of the descendants of her husband's family predominated, over the mere ties of blood and presented Mary to her mind as the object of her bounty. Besides, in mentioning the legatee, it is certainly more likely for the testatrix to forget or mistake the name of the husband, with which she may have been but imperfectly acquainted, than the name of Mary, with which she had formerly been so familiar. But the evidence shows still more conclusively that Mary Smith was actually intended to be the legatee. The original minutes taken down in writing from the lips of the testatrix, as directions for drawing the will, are in proof. The person who took them swears, he was not acquainted with the name of Mary Smith's husband and, therefore, could not undertake to correct any mistake which might have occurred in this respect. By those minutes it appears, the legatees were generally named successively and in regular order; and although there was some transposition of the names when the will came to be drawn and some variation from the minutes when it was finally made, yet the same order or classification is, to a considerable extent, preserved; and, both in the minutes and will, one William Theall is named as a legatee, while next to him comes the name of Mary Smith. Now, William Theall is proved to be the son of Sibil Thomas and uncle to Mary Smith; and also, that these two persons, uncle and niece, are the only surviving members of the branch of the family which descended from the " Thomas" stock and were of the blood of the testatrix's husband. They are classed or named, as it were, together. The inference seems irresistible that the legatee " Mary

"Smith" was really intended to be the complainant, Mary, and not Sarah Smith : who belongs to a very different connection and far removed from William Theall. Another circumstance may likewise be adverted to : John Floyd and the male part of his family are severally named and provided for in the will, but his daughters, of whom there are two, (besides Mrs. Smith) are not mentioned. If they had been named as legatees, there would be good reason to suppose their sister, the "wife of Na-" thaniel Smith," was the person intended by the name of Mary. Such, however, is not the case. It would seem to follow, the testatrix intended to give to her nephew John Floyd and to his sons some portion of her estate, but nothing to any of his daughters.

I am accordingly of opinion, Mrs. Sarah Smith, the wife of Nathaniel Smith, is not the person to whom the legacy is given. On the contrary, it is sufficiently made out from the will and by the evidence that, although Mrs. Mary Smith happens to be the wife of Abraham and not of Nathaniel, yet she is the person entitled to the legacy. A decree must be entered for the executors to pay the legacy to her.

With respect to the costs : I must charge the defendant, Nathaniel Smith, with the complainants' costs. He gave notice to the executors not to pay the legacy to them and claimed it for himself and wife. He has, therefore, been the cause of the controversy. The costs of the executors may be paid out of the residuary estate with great propriety. The will gives the residue to two persons, after the payment of the costs and expenses incident to settling the estate. If the bill had not been filed, the executors would probably have resorted to this court for directions concerning the contested legacy ; and the expenses would then have been a fair charge against the estate. Besides, no injustice will thereby be done to the residuary legatees : for they have identified themselves with this litigation, by doing all in their power to assure the legacy to Mrs. Nathaniel Smith ; and one of them is her brother.