Spencer, J.
In this case, there were two like charitable institutions who claimed the bequests.
If the plaintiffs hád been the only institution claiming these legacies from the executors, I think there would have been no doubtful questions in the case, and the bequests would have been decreed to the plaintiffs, notwithstanding the misnomer in the will and codicil, and perhaps a like observation would apply to the case of the defendants’ association being a sole claimant.
The testator evidently intended to designate one of these institutions as the object of his charitable bequests, and he has not properly named either, and I believe the misnomer was no. fault of his, but was attributable to the negligence of the person to whom he entrusted the preparation of the will and codicil; therefore, I hold this to be a case of latent ambiguity in a will, where the court is authorized to admit parol testimony, tending to show the intentions of the testator, to enable the court to determine which of these two corporations he intended to name and designate in the bequests.
This question of the admission of parol testimony, to explain a latent ambiguity in a will, is first reported in this State, in the case of Stevens v. Maxwell (4 Johns. Ch. 607)." Chancellor Kent decided substantially in that case, that although a testator had been entirely mistaken in the name of a legatee, the bequest was good if the person intended by the testator could be clearly ascertained; and he held that the intention of the testator, and the misnomer, might be shown by evi *251 dence not contained in the will, by parol testimony, and that the person whom the testator intended was ■entitled, and should take the legacy. In that case, the name of Cornelia Thompson was set forth in the will, and one Caroline Thomas claimed, and was decreed to be entitled to the bequest.
This early decision of our former court of chancery had some earlier precedents in English decisions, and it has been approved and followed in the courts of this country in the following later cases: Conolly v. Pardon, 1 Paige, 291; Smith v. Smith, 1 Edw. Ch. 189 ; Same case on appeal, 4 Paige, 271; Roman Catholic Asylum v. Emmons, 3 Brad. 144 ; Domestic & Foreign Mission Society, 30 Penn. 425; Butler v. Tract Society, 23 N. 336 ; Vansant v. Roberts, 3 Md. 119.
After due consideration of these and other precedents, and the opinions of distinguished writers on this subject, I conclude the following propositions embrace the law on this point in this country :
First. A devise or bequest should not be considered void, but carried into effect by the court whenever it is possible for the court to ascertain and determine the meaning and intentions of the testator, and execute the same, in accordance with law and equity.
Second. When it appears that there is a latent ambiguity, or object arising dehors or beyond the will itself, such as words of description of. persons or things that are incorrect, or a misnomer, or language susceptible of more than one meaning or interpretation, whereby the intention of the testator cannot be determined by the language of the will, then parol or other evidence dehors the will is admissiblé, to explain to or inform the court as to what were the intentions of the testator in the premises.
There seems to be a diversity of opinion as to whether, in-such a case, the statements or directions of the testator to his counsel, in regard to the draCwing of *252 the will, can be given in evidence. I hold that the weight of authority and reason favors its admissibility in every case that the court considers one of latent ambiguity, and therefore I have admitted and considered (although objected to by plaintiffs) the testimony of Mr. Wetmore, in this case, as to the conversation between him and the testator, when the latter instructed him to draw the,codicil.
In pursuance of these legal views in the case, I have admitted testimony of facts tending to inform me of the habits of thought and action of the testator in matters and subjects germane to those contained in it, and alluded to in the will, as well as his expressions or statements in regard to his intentions in the premises, with the ultimate view of finding out therefrom, and judicially determining, if possible, the institution or legatee for whom this testator intended his charitable bequests.
' Each of these institutions appear to have been in every way equally entitled to the favorable consideration of- the testator in respect to the attainment of his charitable object; and in my final conclusions I have considered the claim of each of these institutions for these legacies as equally reasonable and good, except in two positions, developed by the facts and evidence, wherein I conclude the plaintiff has established a claim, to be considered and decreed the legatee of the testator, which is superior in point of fact and legal position to any maintained or urged by defendant’s counsel, and they are briefly these:
First. The testator was acquainted .with the plaintiffs’ institution, and with its direction and management, and he had been one of its patrons, and there was no positive evidence that he had ever been informed of, or acquainted with, the institution of defendants. This is a strong point in favor of the plaintiffs’ claim that the testator intended these bequests for them; and there *253 are precedents that go far towards making this point conclusive in favor of plaintiffs, and against defendants.
In the case of Carless v. Carless (1 Mem. 384; S. C., 19 Vesey, 601), a testator gave a legacy to Robert Carless, his nephew, the son of Joseph Carless.”
The testator never had any brother Joseph, but he had two brothers, each of whom had a son named Robert, and these two Roberts, both nephews of the testator, claimed the legacy. The proofs in the case established the fact that the testator was intimately acquainted with one of the Roberts, and but little known to the other, and the court determined that the testator intended the bequest for the nephew with, whom he was best acquainted, and on the most intimate terms, and did not intend it for the nephew of whom he knew but little.
In Smith v. Smith (1 Ed. Ch. 189), the vice chancellor decided in favor of one claimant, and against another, because of the greater intimacy and friendship of the former with the testatrix, although the latter was related by blood to the testatrix, and the former was not.
There are other cases holding like conclusions.
Second. The plaintiffs’ institution was one of a sectarian character, and connected with and sustained by the Protestant Episcopal Church.
The testator was an active and zealous member of that church, and was an intimate friend of two of its influential clergymen, Dr. Hawks and Dr. Eigenbrodt, and the two latter gentlemen were among the most energetic friends and supporters of the plaintiffs’ institution, and one of these clergymen was frequently consulted and advised by the testator in regard to the charitable benefactions of the latter.
The bequests of the will and codicil clearly show the inclination or rather determination of the testator *254 to make liberal provisions for the charitable institutions of his own church, and for the church itself, and I conclude that in choosing between two equally meritorious institutions of this character, that were equally well known to him, the testator would select as his legatee, that institution which was sectarian, and connected with the Protestant Episcopal church, and which was receiving the special friendship and support of its clergy, especially that of the testator’s friends, the said Rev. Doctors Hawks and Eigenbrodt, in preference to that institution that was not sectarian, and not connected with any particular church or denomination. Sectarianism and religious denominational feelings and prejudices exert a strong influence over the human mind. They ever have, and ever will affect mens’ actions and control or guide their charitable benefactions. While I do not find any cases or precedents especially illustrating this point, I do know and feel, that I have no right to ignore the existence of these prejudices and feelings in the mind of the testator, so far as appears from the evidence, but as a judge, I am bound to recognize and duly consider the same, and their effect and influence in a case like this ; and therefore I hold, that the fact of the testator being an Episcopalian, associated with, and surrounded by the influences of that church, as appears from the testimony, raises a strong presumption in favor of his intentions to designate, in these bequests, an institution that was managed and directed by the Protestant Episcopal Church.
For these’ reasons, I have found and decided that the said testator intended 'to designate the plaintiffs in these bequests; and did not intend to name the defendants.
There must be a judgment decreeing these bequests to the plaintiffs.
Mr. L. R. Marsh, for appellants.
Mr. S. P. Nash, for respondents.
From the judgment thus entered the defendants appealed.
By the Court.—Monell, J.
Neither of the parties to this action is designated in the will and codicil by its full corporate title. Some of the words employed by the testator, are in each, and some are not in either; and, therefore, neither the plaintiffs nor defendants can claim the legacies, as against each other, without the aid of extrinsic facts, to more clearly establish the intention of the testator. These two societies, each having the same purpose and object specified by the testator, each claim to be the intended recipients of his bounty.
Some ot the words used by the testator to designate the object of his charity are found in the respective titles of each of these societies. The designation by the testator is “ The Society for the Relief of Indigent Aged Pernales.” The words indigent females ” are the only words found in the plaintiffs’ corporate title ; while in the defendants’ are found the words “aged indigent females,” and “relief.” The word “ society” is not in either,• although “home” in the one, and “association” in the other, may be regarded as equivalent terms. It is evident, therefore, that, neither of these institutions can claim absolutely, to have been so clearly and certainly designated by the testator, as to entitle it to take the legacy. It is understood that this was substantially conceded at the trial, although it is now contended, that there is enough, upon the face of the will and codicil, to determine the questions in favor of the defendants.
Upon this concession,. if it was made, or in the view of its necessity, the learned justice below. admitted *256 such extrinsic evidence as was offered, and upon it determined as a fact, that the testator intended to bestow his bounty upon the plaintiffs.
The evidence thus adduced, and which was supposed to furnish a sufficient reason for the belief that the plaintiffs were the intended recipients of the gift, was without conflict, leaving the only question for us to examine, to be, whether it is sufficient to sustain the finding of fact.
A finding upon conflicting evidence will not, ordinarily, be disturbed, although the court may do so, where it is clearly against the weight of the evidence (Loeschick v. Baldwin, 38 N. Y. 336); but will do so with great caution and only in a clear case. Where, however, there is no conflict, the court can only see whether the evidence is sufficient to authorize the conclusion.
If the evidence, therefore, which was received in this case, was proper and pertinent, and tended to fairly aid in discovering the testator’s intention, and if, upon a fair construction of it, we shall find it sufficient to justify the conclusion of the learned justice below, then, upon well established principles, we should not disturb his judgment.
Was the evidence proper %
At the time of making the will and codicil there was not, nor has there since been, any institution or society, incorporated or otherwise, whose name or title corresponded in terms exactly with the society designated by the name or title in the will. The bequest must, therefore, be declared void for uncertainty, unless the intention of the testator can be ascertained from sources other than the will itself.
Wo aid can be obtained from other parts of the will or codicil. The bequest bears no relation whatever to the other benefactions of the testator, all of which are wholly independent of each other.
*257 But there are in the city of New York two incorporated institutions, each claiming to have been intended by the testator as his legatee. Each of these societies have practically the same object and purpose, namely, the sustenance and care of aged indigent females, and are equally -within the design of the testator, which was to benefit that class.
As between these two societies, therefore, it was not possible, without the assistance of some extrinsic evidence, to determine which was intended as the beneficiary.
It was,' therefore, very proper to let in such proof as might be furnished, and which would aid in ascertaining the probable intention of the testator, in order that one or other of these excellent charities might receive his very liberal gift, which otherwise might lapse for the want of an ascertained taker.
The propriety of this may be further illustrated by reference to a fact not alluded to at the trial, which, had it been, would, I think, have increased the difficulty of reaching the testator’s intention from the will only.
The testator, doubtless, designed to make his benefaction to some institution which afforded a home and support to aged and indigent females.
At the time and long previous to making the will and codicil, there was one other incorporated society in the city of New York, whose objects and purpose was similar to the objects and purpose of those who are now contesting for this legacy, namely, “ The Presbyterian Home for Aged Women,” which might, with some force, lay claim to the legacy, if the legatee is to be decided upon from the will alone.
But the propriety of resorting to extrinsic evidence in these cases has been so frequently and uniformly sanctioned by the courts, that a mere citation of some of the cases is all that is necessary (Hornbeck v. Am. *258 Bible Soc., 2 Sandf. 133; Banks v. Phelan, 4 Barb. 80; N. Y. Ins. for the Blind v. How, 10 N. Y. 84 ; Button v. Am. Tract Soc., 23 Vt. 336 ; In re Gregory, 11 Jur. N. S. 634; Cromie v. Louisville, &c. Soc., 3 Bush. [Ken.] 365 ; Best v. Hammond, 55 Penn. 409).
The evidence which was received was pertinent to the question before the court, and was, in my opinion, sufficient to sustain the finding of fact of the justice below, that the testator intended to designate the plaintiff as his legatee.
It was proved that Mr. Alstyne, the testator, was a communicant of the Protestant Episcopal Church, and that the plaintiffs’ society was connected with, and managed by a board of managers consisting of twenty-one clergymen and laymen of that denomination of Christians.
Mr. Eigenbrodt, a minister of that church, testified, that he had known the testator for a number of years. That his first church connection was with St. Paul’s ; he afterwards became a parishioner of Calvary, and afterwards of the Holy Saviour. He stated that in conversations in 1867, ’8, and’9, Mr. Alstyne, alluding to a favorite object of his, the founding of an institution for the care of old men, spoke also of the desireableness of provision for aged and indigent females, when the witness spoke of St. Luke’s Home for Indigent Christian Females, and laid before him, what he seemed to be familiar with, its claims, in which the testator “ heartily acquiesced.” In one of the interviews St. Luke’s Home was spoken of as under the charge of Dr. Tuttle, and Dr. Hawks’ name was used in connection with' it. Dr. Hawks was at that time pastor of the Church of the Holy Saviour, of which Mr. Alstyne was a parishioner, and he took an active part in the origin of the Home, and was one of its earnest supporters.
It was also ascertained that in 1862, a donation of *259 twenty-five dollars had been made by Mr. Alstyne to the St. Luke’s Home.
This evidence indicated a knowledge in the testator of the plaintiffs’ society, and was deemed sufficient to raise a presumption of a bias in its favor. Such a bias is natural. Where two benevolent societies exist at the * same time and in the same place, having the same object and purpose, one of which is independent and the other denominational, there will be a presumed leaning towards the denominational one, by all those who are of the same religious faith.
The evidence of Mr. Wetmore, who drafted the will and codicil, and who testified to a conversation with the testator at the time the latter was prepared, does not, in any degree, weaken the strength of the plaintiffs’ case. He says he called the testator’s attention to the different legacies, and then said, “Here is the Old Ladies’ Home, what will you do with that V' He said, “I will increase that twenty thousand dollars.” I said, “You are doing very well for the Old Ladies’ Society.” He said, “ I give that in compliment to my mother; she is a very old lady.”
It may be that Mr. Wetmore had, indeed, it is quite certain that he had, the defendants’ association in Ms mind, when speaking of the Old Ladies’ Home. He had always.heard it so called. But there is nothing in this that shows that the testator had any such understanding. Each of these institutions was familarly known as, and was called, the Old Ladies’ Home; and unless Mr. Wetmore imparted his understanding to Mr. Alstyne, which he did not, or the latter indicated in some way a corresponding intention, which he did not, there can be no presumption that they thought alike.
The light which has been cast, by the evidence, upon the question in this case, is not great. But it has disclosed facts and circumstances, which, standing as they *260 do, uncontradicted, point, as I think, with sufficient clearness to an intention to make the plaintiffs the beneficiary of the charity.
Perhaps, if we were sitting at the trial of this action, and examining, res nova, the evidence- which has been produced, we might reach a different conclusion. But sitting, as we are, in review of the judgment of the special term, we are not at liberty to differ with the views of the justice below, except for grave and palpable error in ids conclusion of fact. Such error we do not find.
In the very recent case of Briscoe’s Trust (cited from the Law Times of February 24,1872, p. 310), the force of the kind of "evidence admitted in this case is recognized and approved. The bequest was to the “Victoria Hospital.” There was no institution strictly so called. There was the “ City of London Hospital,” in Victoria Park, and the Victoria Hospital for sick children, in Chelsea. The evidence showed that the testator had long been interested in the first named hospital, while he was almost a total stranger to the latter. From this it was decided that the testator intended to bestow his gift upon the first named hospital.
The determination of the question involved in this case in favor of one of these societies and against the other, is probably of little importance, as affecting the design of the testator. They have the same benevolent end in view, are alike and equally meritorious, and whether one or the other becomes the almoner of the rich' legacy of Mr. Alstyne, there is every assurance, that in either case it will be faithfully devoted to the object he designed and desired to foster and aid.
The judgment of the special term is affirmed.
Hote.—Since the decision in the above case, an appeal was taken to and heard by the court of appeals, and the Reporters are informed ■ *261 that the judgment was reversed and final judgment given in favor of the defendants, on the grounds (as the Reporters have been informed), that the will itself indicated the intentions of the testator in favor of the defendants, and proof aliunde was inadmissible. As we deem it an important and interesting case; we report the same fróm this court notwithstanding the reversal. The Reporters.