LEFEVRE, executrix, etc., v. LEFEVRE *et al.*, appellants.

*Will — construction of — misnomer of legatee — void trust.*

A testator gave a bequest to the "Home of the Friendless, in New York." There was no institution of that name, but the American Female Guardian Society was proved to be frequently called by that name, and to have been so called by the testator while living. *Held,* that the said society would take the bequest.

The testator gave a bequest "to the Presbyterian Society of Carthage," another "to the Methodist Church of Carthage," and another "to the Baptist Church," without adding the words "of Carthage." It was proved that there was in Carthage only one Presbyterian Society, one Methodist Society, and one Baptist organization. These bodies were incorporated under names different from the names used by testator. *Held,* that the Presbyterian and Methodist Societies would take under testator's will, but the Baptist organization would not.

The testator left a portion of his estate "to the care of my wife, to be disposed of as she shall see fit, in charitable purposes." *Held,* that this was an attempt to create a trust not authorized by the laws of this State, and the provision was void.

APPEAL by the defendants, heirs at law of William C. Lefevre, deceased, late of Carthage, Jefferson county, N. Y., from a decree of the special term, entered upon the decision of Mr. Justice DOOLITTLE, giving construction to the last will and testament of said William C. Lefevre.

The testator died March 4, 1872, leaving personal property about $45,000, and real estate $2,000. He left surviving him his widow Pamelia M. Lefevre, the plaintiff, but left no children or other descendants, and his only heirs at law and next of kin were his brothers and sisters, who are defendants in this action. His will was made March 1, 1872, and contained the following clauses:

"First. I give and bequeath to my wife, Pamelia M. Lefevre, one-third of my whole estate, both real and personal, after my outstanding debts are paid and satisfied.

"Second. I give and bequeath to the Home of the Friendless, in New York, one-third of my estate, after my outstanding debts are paid and satisfied.

"Third. I give and bequeath to the Presbyterian Society of Carthage ($2,000) two thousand dollars.

· "To the Methodist Church of Carthage, ($1,000) one thousand dollars.

"To Julia Treat, wife of Alfred Treat, ($2,500) two thousand five hundred dollars.

"To James T. Peden, ($1,000) one thousand dollars.

"To Aunt Sena Hubbard, ($250) two hundred and fifty dollars.

"To Frank Ward, ($500) five hundred dollars.

"To the Baptist Church, ($500) five hundred dollars.

"The remainder of this third, after deducting the above-mentioned sums, is to be left to the care of my wife, Pamelia M. Lefevre, to be disposed of as she shall see fit, in charitable purposes; and I hereby appoint my wife, Pamelia M. Lefevre, sole executrix of this, my last will and testament, hereby revoking all former wills by me made."

There never has been, at any time, a corporation in the city of New York whose corporate name was the Home of the Friendless. A corporation named the American Female Guardian Society has been commonly called by the name of the Home of the Friendless. This institution the testator had visited, and had, after his return home to Carthage, talked about his visit, calling it by the last-mentioned name, and, a few days before the execution of his will, had spoken of it by the same name, which name, it was shown, was cut over the door of one of the buildings of the society, in marble letters. No other institution in the city of New York was ever known by such a name, and none appeared except the Female Guardian Society to claim the benefit of testator's bounty.

At the time of testator's death, and for some years previously, there had been only one incorporated Presbyterian Society or Church in Carthage, which was named the First Presbyterian Society of Carthage.

There was but one Methodist church, society or corporation in the village of Carthage, this was named "The First Society of the Methodist Episcopal Church in the village of Carthage."

There was only one Baptist church, this was named "The Trustees of the First Baptist Church in the village of Carthage, in the county of Jefferson, New York."

The various institutions named above were joined as defendants with the heirs at law. The heirs at law only appealed from the decision and decree of the special term.

*H. E. Smith*, for appellants. The will being made within two months of the death of testator, who left a wife, the bequest to the

Lefevre v. Lefevre.

Home of the Friendless is invalid under our mortmain act. 2 R. S. 624, § 6 (5th ed.); *Beekman* v. *People*, 27 Barb. 303; Will. Eq. Jur. 576; *McCaughal* v. *Ryan*, 27 Barb. 376; *Bascom* v. *Albertson*, 34 N. Y. 584; Laws 1860, chap. 360; Willard's R. E. 501. Extrinsic evidence to show that bequest to Home of the Friendless was intended for American Female Guardian Society was inadmissible. *Mann* v. *Mann*, 1 Johns. Ch. 231; S. C. on appeal, 14 Johns. 1; *Jackson* v. *Sill*, 11 id. 201; *Tole* v. *Hardy*, 6 Cow. 333; *Myers* v. *Eddy*, 47 Barb. 263; 1 Redf. on Wills, 407, 530 (3d ed.); Bacon's Maxims Reg. 23 (25); 1 Greenl. Ev. 424 (10th ed.); *Delmare* v. *Robello*, 1 Ves. Sr. 412; *R. C. Orphan Asylum* v. *Emmons*, 3 Bradf. 144; *Beaumont* v. *Fell*, 2 P. Wms. 141. (*Contra* overruled.) *Miller* v. *Travers*, 8 Bing. 239; *Mostyn* v. *Mostyn*, 5 H. L. Cas. 168; *Hiscocks* v. *Hiscocks*, 5 M. & W. 363.

*Merwin & Mullen*, for plaintiff and respondent. A person or corporation, testator meant to describe, will take and extrinsic evidence is competent to show application of description. 1 Redf. on Wills, 691, § 42, pr. 40, 695, pr. 49; *Smith* v. *Smith*, 1 Edw. Ch. 189; S. C., 4 Paige, 371; 1 Greenl. Ev. 423, § 297; Wigram on Wills, 256, § 196; Roper on Legacies, 166; *Careless* v. *Careless*, 19 Ves. 601; *N. Y. Inst. for Blind* v. *How's Ex'rs*, 10 N. Y. 84; 1 Jarman on Wills, 330, 361, 363–7, 370 (4th Am. ed.); *Brewster* v. *McCall*, 15 Conn. 274; *Mynot* v. *Boston Asylum*, 7 Metc. 416; *Wilson* v. *Squire*, 1 Y. & C. Ch. 654; *Bradshaw* v. *Thompson*, 2 id. 295; *First Parish* v. *Cole*, 3 Pick. 232; *Queens College* v. *Sutton*, 12 Sim. 521; *Trustees* v. *Peaslee*, 15 N. H. 317; *Attorney-General* v. *Mayor of Rye*, 7 Taunt. 546; 2 Williams' Executor, 1035, note; Dayton's Surrogate, 415; *Miller* v. *Travers*, 8 Bing. 251; *Herbert* v. *Reid*, 16 Ves. 481; *Thomas* v. *Stevens*, 4 Johns. Ch. 607; 10 Bacon's Abridgment, 538; *Lee* v. *Pain*, 4 Hare, 251; Angell & Ames on Corp., § 99. The restriction of the statute as to wills made within two months before decease does not apply to the Guardian Society. Laws 1848, chap. 319, § 6; Laws 1849, chap. 244, § 4; Laws 1860, chap. 360; *Pierce* v. *Delamater*, 1 N. Y. 17; Potter's Dwarris, 113, note, 154, note. The widow is entitled to her share of the residue not validly disposed of. 3 R. S. 183, § 82 (5th ed.); *Hoes* v. *Van Hoesen*, 1 Barb. Ch. 379; *Nickerson* v. *Bowley*, 8 Metc. 424; *Hart* v. *Marks*, 4 Bradf. 161; 2 Williams' Executor, 1343; *Pickering* v. *Stamford*, 3 Ves. 332; *Waring* v. *Ward*, 5 id. 676; *Garthshore* v

*Chalie,* 10 id. 18; *Leake* v. *Robinson,* 2 Merivale, 363; 1 Jarman on Wills, 400 (4th Am. ed.); 2 Roper on Husb. and Wife, 23 (2d ed.); Dayton's Surrogate, 560 (3d ed.); *Doughty* v. *Stillwell,* 1 Bradf. 300. Doctrine of election don't apply. 2 Story's Eq. Jur. 1075; *Havens* v. *Sackett,* 15 N. Y. 365.

*Thomas D. Sherwood,* for American Female Guardian Society, respondent, cited, upon the question of the validity of the bequest to the Guardian Society, in addition to the citations of plaintiffs' counsel, *Banks* v. *Phelan,* 4 Barb. 80; *Parsons* v. *Parsons,* 1 Ves. Jr. 266; *Hornbeck* v. *Am. Bible Society,* 2 Sandf. Ch. 133; *Case of Chancellor of Oxford,* 10 Coke, 57; *Conden* v. *Clerk,* Hobart, 32; *Foster* v. *Walter,* Cro. Eliz. 106; *Dr. Ayray's Case,* 11 Coke, 20 *b;* *Tinker* v. *Seaman's Aid Society,* 7 Metc. 188. Parol evidence was admissible to identify a legatee. *Harris* v. *Bishop of Lincoln,* 2 P. Wms. 135; *Ulrich* v. *Litchfield,* 2 Atk. 372; *Hampshire* v. *Pierce,* 2 Ves. Sr. 216; *Bruce* v. *Denison,* 6 Ves. Jr. 397; *Walpole* v. *Cholmondelly,* 7 T. R. 138; 2 Phil. on Ev. 247, 531; *Simpson* v. *Margitson,* 11 Q. B. 25; *Doe* v. *Roe,* 1 Wend. 542; *Tole* v. *Hardy,* 6 Cow. 333; *Schuyler* v. *Russ,* 2 Cai. 201; *Trustees* v. *Peaslee, executors,* 15 N. H. 317; *Minshull* v. *Minshull,* 1 Atk. 412; Wigram on Wills, proposition 5, Pl. 61–67, 212, 215; *Shore* v. *Wilson,* 9 Clark & F. 355; *Williams* v. *Crary,* 4 Wend. 443; *Attorney-General* v. *Clapham,* 4 De Gex, M. & G. 628; *Miller* v. *Gable,* 2 Denio, 492; *Blinkhorn* v. *Feast,* 2 Ves. Sr. 28; *Fish* v. *Hubbard's Executors,* 21 Wend. 651. Testator's declarations were admissible to identify legatee. *Beach* v. *Earl of Jersey,* 1 B. & A. 550; S. C., 3 B. & C. 870; *Vernon* v. *Henry,* 3 Watts, 391; *Smith* v. *Fenner,* 1 Gall. 170; *Robinson* v. *Whitley,* 9 Ves. 577; *Doe* v. *Allen,* 12 Ad. & Ellis, 451; *Cheyney's Case,* 5 Co. Rep. 68 *a;* *Doe* v. *Needs,* 2 M. & W. 129; *Reynolds* v. *Whelan,* 16 Law Jour. 434.

Per CURIAM. Judgment affirmed, upon the opinion of the special term, with costs, to be paid by Isaac Lefevre, the appellant.

The following is the opinion at special term, adopted by the general term:

DOOLITTLE, J. It is not necessary that a bequest to a corporation should be given to it by its corporate name to be valid. It can be given to it by description, which is sufficient to distinguish the

legatee from all other corporations. It may be given to it by a name by which it is commonly called, and by which the testator was in the habit of calling it.

When the bequest is given in this manner, a question of identity is raised, which it requires extrinsic evidence to solve. If a corporation can be found which is certainly designated by the description of the legatee in the will, the bequest is valid, and such legatee is entitled to it.

Parol evidence in such cases is admissible to identify the legatee, or to apply the description given in the will. It is not evidence to show the testator intended something different from what he had stated in his will, but to show what the words used in the will mean, or what the testator intended by them. *New York Institution for the Blind* v. *How's Ex'r*, 10 N. Y. 84, 88; *Brenstee* v. *McCall*, 15 Conn. 274; *Levy* v. *Levy*, 40 Barb. 610; *Trustees* v. *Peaslee*, 15 N. H. 317. A devise to a college by a name it bears in common parlance, though not the true corporate name, is good. 3 Pick. 232; see PARKE'S, Ch. J., opinion, 237, etc.

In the case of the *New York Institution for the Blind* v. *How's Ex'r*, the bequest was in these words: "I give and bequeath unto the trustees of the institution for the maintenance and instruction of the indigent blind in the city of New York, the sum of three thousand dollars."

A corporation in the city of New York, by the name of "The New York Institution for the Blind," an institution incorporated for the purpose of instructing children who have been blind, or may have become blind by disease or accident, claimed the bequest. It was proved there was no institution in New York engaged in the education or support of the blind, except the claimant. The institution was authorized to receive a certain number of pupils from the body of the State, for whom the State paid.

Judge DENIO, in his opinion in that case, says: "The question arises upon the description. It is a question of identity, and the point is, whether the legatee can be found and certainly identified by the description contained in the will. The description is not shown to be erroneous, though there be a different class of persons also to be relieved, or if some are to be instructed merely, and not supported." The description was held to identify the plaintiff as the legatee intended by the testator.

In the case of *The Trustees* v. *Peaslee*, the bequest was to the

" Franklin Seminary of Literature and Science, New Market, N. H."
There was no other school or seminary of learning in that town
except " The South New Market Methodist Seminary." *Held*, the
last-named institution was sufficiently described in the bequest.

The following authorities seem to dispose of the questions raised
and argued on the trial in regard to the admission of parol evidence
in a case like the one under consideration.

" Extrinsic evidence is not admissible to show the intent of the
testator, or that the will means something different from what it
states, but is admissible to identify the legatee named or described
in the will, or to apply the terms of the will to the object of the
will or bequest. It is in aid of and to give effect to the will."

" Evidence to prove intention by parol declarations is entirely
different from evidence to explain application of the will. The
latter kind is always admissible. The executor seeks it when dis-
charging the bequest of the will, and the courts demand it when
the description of the subject or of the donee is to be applied." 3
Bradf. 144, 149.

" For the purpose of determining the object of a testator's bounty
* * * the court may inquire into every *material* fact relating to
the person who claims to be interested under the will, * * *
for the purpose of enabling the court to identify the person intended
by the testator. The same is true of every other disputed point
respecting which it can be shown that a knowledge of extrinsic
facts can in any way be made ancillary to the right interpretation
of a testator's words." Wigram on Extrinsic Evidence in aid of
the Interpretation of Wills, Proposition V.

Pl. 61, Example 1. " Where the *person* or thing intended by
the testator is the point of contention, the office of court is simply
to *declare* what person or thing is described in the will."

Pl. 62. " The proposition now under consideration asserts that
in all cases calling for such a declaration, evidence as to the nature,
*name*, marks, qualities, etc., of the subject mentioned in the will
(whether person or thing) is admissible in order to enable the court
to determine whether the description in the will applies or not."

Pl. 63. " If a man devise his estate, correctly described as the
Manor of Dale, evidence must be admissible to show that a subject
exists which answers the description in the will. This needs no
authority."

Pl. 64, Ex. 2. " If the description in the will is *incorrect*, evidence

that a subject having such marks upon it exists, must be admissible, that the court may determine whether such subject, though incorrectly stated in the will, be that which the testator intended; no question can be raised for the opinion of the court without such evidence."

Pl. 65. "In the legitimate application of this process, a nickname has been held.to be a sufficient description of the object of the testator's bounty, it being proved that the testator was in the habit of calling the legatee by such name.

Pl. 66. "So also a name given by reputation, though not strictly appropriate, may be a sufficient description of the person intended."

Pl. 67. "So a description, though false in part, may, with reference to intrinsic circumstances, be absolutely certain, at least sufficiently so to enable the court to identify the subject intended," etc. See O'Hara on the Interpretation of Wills, § 15, p. 45.

"In respect to the case of a nickname or other reputed designation, the principle upon which parol evidence is admitted seems identical with that which allows an inquiry into the circumstances surrounding the maker of the instrument, with a view to a right interpretation and application of the language which he has used. It is consistent with the office of exposition in the strictest case." 2 Phillips' Ev., Cow. Hill and Edw. Notes, ch. 8, § 4, note 519, p. 773.

"Evidence will be admitted to show that a testator has been in the habit of calling a particular person by a peculiar name, for the purpose of showing that such person was intended by that name when used in the will." Ib. original text, p. 768.

In the case of *Doe dem Hiscocks* v. *Hiscocks*, 5 Mees. & Wels. 363, so often cited against the admission of extrinsic evidence the Chief Baron LORD ABINGER, in giving the opinion of the court (p 367), after stating that parol evidence was admissible to show the meaning and application of the testator's words, says: "Again, the testator may have habitually called certain persons or things by peculiar names, by which they were commonly known. If their names should occur in his will, they could only be explained and construed by the aid of evidence to show the sense in which he used them, in like manner as if his will were written in cypher or in a foreign language. The habits of the testator in these particulars must be receivable in evidence to explain the meaning of his will.

In *Blinkhorn* v. *Feast*, 2 Ves. Sr. 28, the Lord Chancellor said he

never doubted that parol evidence was admissible to ascertain identity.

"Parol evidence is admissible to enable the court rightly to understand in what sense words are used in a deed," etc. *Attorney-General* v. *Clapham*, 4 De Gex, M. & G. 591, 628.

Parol evidence is admissible to show that the name mentioned in the will was the usual pet or nickname given by the testator to the party claiming the legacy to explain the meaning of the will. 2 Williams on Ex'rs, 1037–8 ; Angell & Ames on Corporations, 60 ; Wigram on Extrinsic Ev. (2d Am. ed., edited by O'Hara), p. 113 ; same proposition, 4 Pl. 62 to 67; same proposition, 4 Pl. 58 and notes; *Lell* v. *Paine*, 4 How. 251; *Thomas* v. *Stevens*, 4 Johns. Ch. 607 ; *Ryers* v. *Wheeler*, 22 Wend. 148, 150 ; *Tucker* v. *Seaman's Aid Society*, 7 Metc. 207, 809; 3 Pickering, 232, 237 ; 1 Jarmand on Wills, 330, 363–4, 367, 370; 7 Bacon's Abridgment, under title Wills and Testaments, sub. C. F. ; *Clayton* v. *Lord Nugent*, 13 Mees. & Wels. 200, 207–8 ; *Parsons* v. *Parsons*, 1 Ves. Jr. 266; 3 Vesey, 148 ; Dayton's Surrogate (under mistakes in the name or description of the legatee) 383 (ed. of 1855), and cases cited ; 1 Greenleaf's Ev., § 289.

A mere misdescription of the legatee does not render a legacy void, unless the ambiguity is such that it is impossible to ascertain, either by the will itself or from proof *dehors* the will, who was intended as the object of the testator's bounty. *Smith* v. *Smith*, 1 Edw. Ch. 189; 4 Paige, 27.

The evidence in this case discloses the fact that the charter of the American Female Guardian Society authorized it to establish and maintain "houses of industry and houses for the relief of friendless, destitute or unprotected females, and for friendless or unprotected children."

That soon after the charter was granted, and as early as 1849, the society erected a building in the city of New York for a home for the friendless, over the main door of which were cut, in a marble slab, the words "Home of the Friendless." That several buildings, before said will was made, were erected in connection with that building, by the society, which were used for its purposes. The office of the society and its general business was transacted in this cluster of buildings, and there was no name or sign on any of them except the one mentioned, "Home of the Friendless."

The society in common parlance in New York was and is called

"The Home of the Friendless." It is known at least as well, if not better, by that name than by its corporate name. Its correspondents, from all parts of the country, are, and were when the will was made, in the habit of addressing it as the "Home of the Friendless." One of its principal objects, and a large part of its actual business, is to furnish a home for the friendless. There is no other corporation in New York of that name, or known or called by that name, except the one in question.

The testator himself visited this institution about eight months before he made his will, and was in the building named the "Home of the Friendless," and noticed specially the manner children were provided for there. When he returned home on that occasion he called that society the Home of the Friendless, and was much pleased with the manner he saw it provided for the children. A few days before he made his will he spoke of this society as the Home of the Friendless, and called it by that name.

It appears this society, in common parlance, was called the "Home of the Friendless," and was known as well by that name as by its corporate name. It does not appear that the testator knew of any other society or corporation in New York called by that name, or that there was any other society in New York known to him which had established or maintained a home for the friendless.

No other society, except the one in question, has claimed the legacy. These facts very clearly identify the claimant as the legatee described in the will. If there are several bodies in New York known by the name of the "Home of the Friendless," then the question arises, does the evidence show which one of them the testator intended? I think it does. The testator knew the claimant was so called. He visited it, and himself called it the "Home of the Friendless." It does not appear he ever visited any other, or knew of the existence of any other, and the very terms of the bequest indicated he knew of but one in New York.

By section 6 of the act entitled "An act for the incorporation of benevolent, charitable, scientific and missionary societies," chapter 319 of the Laws of 1848, it is provided that any corporation formed under that act should be capable of taking real and personal estate by virtue of any devise or bequest contained in the will of any person, provided no person leaving a wife or child, or parent, shall devise or bequeath to such corporation more than one-fourth of his or her estate, after the payment of his or her debts, and such devise

or bequest shall be valid to the extent of such one-fourth. And no such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator.

The defendant, the "American Female Guardian Society," was not incorporated under the last-mentioned act, but by section 4 of the act incorporating that society (Laws of 1849, chap. 244), it is provided that it shall have power to purchase and hold real estate sufficient for the actual occupation and necessary uses of the society, and receive by gift or devise, in the same manner and subject to the same restrictions as provided in the general law for the incorporation of religious and benevolent associations, and to hold and convey such real estate."

No provision was necessary to enable the society to take personal property by purchase or by bequest. It had that power without it. The section was not introduced simply to impose the limitations contained in section six of the said act of 1848. It was introduced to enable the society to purchase and to take, by gift or devise, sufficient real estate for the actual occupation and necessary uses of the society, and to hold and convey the same; and in giving that power it subjected it to the limitations contained in said section six. Said section four is inartificially drawn, but I think the intention of the legislature is quite clear. It first give the society the power to purchase the necessary real estate, then gives it the power to take it by gift or devise, and to hold and convey it. Such societies are founded on the idea that they are to be established and supported mainly by gifts.

It, in the first line of the section, gives the power in terms to *hold* the real estate acquired by *purchase*. The subsequent words, " to hold and convey such real estate," apply to that they should receive by gift or devise. The words of limitation introduced do not give the power, but simply qualify it. Reading the section and leaving out the words of limitation, the power intended to be given is more apparent.

" § 4. Said corporation shall have power to *purchase* and *hold* real estate sufficient for the actual occupation and necessary uses of the society, and receive by gift or devise, and hold and convey such real estate."

It speaks of nothing but real estate. Being a charitable institution, founded on the idea that it was to be established and sustained by

charitable contributions, the legislature very naturally anticipated, that if it was to be a success, some portion, if not all the lands it required would be given to it, and gave it the power to take it from any person willing to give, provided the amount given by will did not exceed one-quarter of the whole estate of any donor who left a widow, parent or child, etc.

It is to be regretted that the two months' limitation has not been adopted as part of the general policy of the State. In the general act referred to it is in express terms limited to corporations formed under that act, and chapter 360 of the Laws of 1860 seems to indicate no disposition on the part of the legislature to extend the limitation, if it does not repeal it.

The validity of the bequests in the third clause of the will to the three churches depends upon the question whether the legatees are sufficiently described to be identified. The testator, at the time he died, and for several years prior thereto, resided with his family in the village of Carthage, in the county of Jefferson, where he made and executed his will. At the time he made his will, and for several years prior thereto, there were in said village the following named religious corporations, each of which had and occupied a church for religious worship, to wit:

" The First Presbyterian Society of Carthage."

" The First Society of the Methodist Episcopal Church in the village of Carthage."

" The Trustees of the First Baptist Church in the village of Carthage, in the county of Jefferson, New York."

And there were not, at the time said will was executed, or prior thereto, any other Presbyterian, Methodist or Baptist societies or church in Carthage.

The words, " The Presbyterian Society *of Carthage*," is a sufficient description by which to identify the claimant as the legatee intended, and the same is true of the words " The Methodist Church of Carthage." The words, " The Baptist Church," is not so particular a description as the others.

The words, " The Methodist Church of Carthage," distinguished the only church of that kind in that village, from all others. If there had been two Methodist churches, there is nothing in the description by which the one the testator intended could be identified.

There are a great many Baptist churches in this country, and,

doubtless, several in the county of Jefferson. There is nothing in the description by which the one the testator intended can be identified. No evidence has been given to aid the court in applying the description, or identifying the legatee intended by the description, except that there is an incorporated Baptist church in Carthage, and but one. If there is any legal presumption that a legatee named in a will, whose residence is not stated, resides in the place where the testator resides and made his will, then that presumption, coupled with the description given, would be sufficient to identify the church intended.

The rule is, that a bequest can be given to a corporation by description, and it is valid when the description is sufficient to certainly designate the person or corporation intended, from all others. I do not think the description is sufficient, within the rule.

The testator, after having disposed of two-thirds of his estate, gives certain specific legacies out of the remaining third, and then disposes of the balance by the following words of the will, and by no others:

"The remainder of this third, after deducting the above-mentioned sums, is to be left to the care of my wife, Pamelia M. Lefevre, to be disposed of as she shall see fit, in charitable purposes."

It is not given to his wife to use for herself, or in such manner as she may deem best, but it is placed in her care, to be applied to such charitable purposes as she shall think proper. It is an attempt to create a trust not authorized by the laws of this State.

The trust is void, and such remainder thus attempted to be disposed of must be regarded as property undisposed of by the will, and must be distributed in the same manner as though the testator died intestate, according to the statute of distributions.

The personal estate is sufficient to pay the testator's debts and all the valid legacies given by the will. There is no express authority given by the will to the executrix to sell the real estate. The will provides for the distribution of the whole estate, and seems to require the conversion of the whole into money; but striking out the said bequests, the will does not purport to dispose of the whole estate.